FILED
2015 Aug-24  PM 11:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **RANDY CAMPBELL,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **CV-2015- 1095-KOB** |
| | ) | |
| **PNC BANK N.A.,** | ) | |
| **MORTGAGE ELECTRONIC** | ) | |
| **REGISTRATION SYSTEMS, INC.,** | ) | |
| **HOME LOAN CENTER, INC.,** | ) | |
| **LENDING TREE LOANS,** | ) | |
| **DEFENDANTS.** | ) | |

## AMENDED COMPLAINT

Comes now, Randy Campbell, by and through his attorney of record and files his complaint against Defendants PNC Bank, N.A., Mortgage Electronic Registration Systems, Inc., Home Loan Center Inc., and Lending Tree Loans in accordance with the Federal Rules of Civil Procedure as in support of said amended complaint states as follows:

## PARTIES

1.   The Defendants, PNC Bank N.A., Home Loan Center Inc., and Lending Tree Loans are foreign corporations doing business in Etowah County Alabama, and are "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6).

2.   The Plaintiff, Randy Campbell, in this action is an adult resident of Etowah County, Alabama, and is a "consumer" and/or person affected by a violation of the FDCPA.

1

## JURISDICTION

3.      Plaintiff's amended complaint seeks enforcement and remedies pursuant to Alabama and federal statutes.   The underlying action is based upon a contract executed in Etowah County, Alabama. The action is brought regarding an attempted foreclosure instituted in Etowah County, Alabama, and is in the nature of a complaint regarding that attempted foreclosure action. The action is brought to enforce the contractual remedies allowed in the mortgage document. The action seeks damages in contract and tort for the actions of the Defendants with respect to their servicing, attempted foreclosure on the loan in question, and other illegal or improper acts.

## VENUE

4.      Venue is proper in this Court as the action was properly removed to this Court from the Circuit Court of Etowah County Alabama.  Plaintiff is a citizen of Etowah County, all or substantially all of the wrongs complained of occurred in this district, and the property is situated in this district.

## STATEMENT OF FACTS

5.      Randy Campbell bought the property located at 1528 Sibert Drive, Gadsden, AL 35905.   On March 2, 2012, Campbell obtained a loan with Lending Tree and executed a mortgage with Mortgage Electronic Registration Systems Inc. (MERS) solely as nominee for Lending Tree and also signed a promissory note with Lending Tree Loans.   The Mortgage contract provides for an escrow account for the taxes and insurance. The mortgagee is required to pay for the insurance and taxes from the escrow account.

6.      Randy Campbell currently resides at 1528 Sibert Drive, Gadsden, Alabama 35905.  The Plaintiff's property is not in a flood plain as defined by FEMA and flood insurance is not required for this property.

7.     The loan was allegedly later sold and transferred to PNC although the Plaintiff was not made aware of said transfer and disputes the validity of the alleged transfer by Defendant MERS.

8.     On December 15, 2014, Defendant, PNC improperly and wrongfully began foreclosure proceedings on Campbell's property. There was a sale date of March 23, 2015 which was postponed due to Campbell sending a letter pursuant to the Fair Debt Collection Practices Act to the foreclosing Attorney on March 20, 2015 disputing the debt and contesting the foreclosure sale.   A QWR was also sent to PNC Bank and to the foreclosing attorney on March 20, 2015.   PNC Bank never responded to the QWR.  The last sale date which was set for June 1, 2015 was cancelled due to the filing of the Plaintiff's complaint in the Etowah County Alabama Circuit Court on May 28, 2015.

9.     The Law firm of Sirote and Permutt, P.C. handled the attempted foreclosure sale.

10.    The Defendants began foreclosure proceedings on Plaintiff's property on December 15, 2014 despite knowing that the Plaintiff claimed that he was not in default and that the attempted foreclosure sale was wrongful and invalid. The foreclosure sale date which included false information related to the alleged default on the indebtedness was published in the newspaper, the Gadsden Messenger, in January 2015, February 2015, March 2015, April 2015, and May 2015.  Furthermore, said false and inaccurate information related to Campbell's alleged default was reported to the national credit bureaus and Campbell's credit and reputation were damaged as a result of the reporting of the foreclosure sale date and default which was invalid and wrongful.   Campbell was not in default on his loan, and the acceleration of the loan was improper. Nonetheless, the Defendants published false information on the dates as noted above in the newspaper to the general public regarding Campbell being in default on the loan when he was not.  This false information regarding the improper default and acceleration was also published on the internet and widely available to the general public.  Furthermore, said false and inaccurate information related to Campbell's alleged default was reported to the national credit bureaus and Campbell's credit and reputation were damaged as a result of the reporting of the foreclosure sale date and default which was invalid and wrongful.

Campbell was approached by several members of the public regarding the foreclosure sale of his home who advised him that they had either seen the sale advertised on the internet or in the newspaper. Furthermore, several of his neighbors approached him regarding the sale causing him to suffer embarrassment and ridicule. Moreover, Campbell's business relationships suffered for the publication of this false information. Several of his clients questioned him regarding the sale notice published in the newspaper and his reputation suffered as a result of these false publications. In addition, Campbell suffered a loss of income from the loss of some business clients due to the damage to his reputation from the publication of the false information in the newspaper regarding the default and foreclosure sale.

11.     The foreclosure sale date was reported to the national credit bureaus and Campbell's credit was damaged as a result of the reporting of the foreclosure sale date which was invalid and wrongful.

12.     Campbell upon information and belief, contend that the alleged Assignment of the note and mortgage is defective, void, or otherwise unenforceable as to the security instrument in question in this case. PNC Bank is not the owner of the loan and neither is MERS. The Defendants provided further false information published in the newspaper when it was published that PNC Bank is the owner of this loan and had power to foreclose. PNC Bank on behalf of the trust has no proper assignment of the note or mortgage and has no power to conduct a foreclosure sale.

13.     Campbell contends that the attempted sale was wrongful, illegal, in violation of law and the documents governing the relationship between Campbell and the owners of the note and mortgage. Furthermore, Campbell alleges that he was not behind in his payments on the mortgage and that he was improperly defaulted and that the note was improperly accelerated.

14.     Campbell contends that the foreclosing entity lacked standing or authority to initiate foreclosure proceedings on his property.

15.     Campbell alleges that the Defendants on April 3, 2013, improperly and illegally forced placed flood and hazard insurance on his mortgage loan

account and that the actions of the Defendants and its agents, employees and servants were wrongful and tortious. This was done in violation of the mortgage contract and escrow account provisions. By "force placing" this insurance Defendants improperly caused the monthly mortgage payments to increase significantly. The insurance obtained and force placed by PNC Bank was through American Security Insurance Company.

16.     Campbell alleges that the actions of Defendants by improperly attempting foreclosure on their property is a violation of law, wrongful and tortious and that the Defendants had no authority to foreclose on his home or property, and that their actions constitute negligence, wantonness, abuse of process and slander of title.

17.     As a direct result of the acts complained of Campbell has suffered great mental anguish, damage to his reputation, economic and emotional damages and claims from Defendants all damages allowable under the law.

18.     In September 2013, Campbell sent a monthly payment to Defendants; however, Defendants refused the payment and returned it to Campbell without explanation. After, Campbell called and inquired as to the returned payment, Defendants advised Campbell that he was in default for failure to make payments, but could not explain why he was allegedly in default. Moreover, Defendants advised Campbell that it would no longer accept payments from him and that Defendants would be turning over his account for foreclosure. Prior to September 2013, Defendants accepted and cashed Plaintiff's monthly payments, but failed to properly apply them to his account pursuant to paragraph 2 of the mortgage contract. From October 2013 until January 2014, Defendants returned payments to Campbell again also in violation of the mortgage contract.

19.     Specifically, the May 2013, June 2013, and August 2014 payments, as well as others, were cashed by Defendants but not applied at all to Campbell's account.

20.     On December 15, 2014, Defendants improperly and wrongfully began foreclosure proceedings on Campbell's property.

21.     The Defendants purportedly began foreclosure proceedings on Plaintiff's property on December 15, 2014 despite knowing that the Plaintiff, Campbell, claimed that the attempted foreclosure sale was wrongful and invalid, and that he was not in default at the time of the acceleration.

22.     The foreclosure sale date which included false information related to the alleged default on the indebtedness was published in the newspaper, The Gadsden Messenger, in January 2015, February 2015, March 2015, April 2015, and May 2015.  Furthermore, said false and inaccurate information related to Campbell's alleged default was reported to the national credit bureaus and Campbell's credit and reputation were damaged as a result of the reporting of the foreclosure sale date and default which was invalid and wrongful.

23.     Campbell contends that the attempted sale was wrongful, illegal, in violation of law and the documents governing the relationship between Campbell and the owners of the note and mortgage.  Furthermore, Campbell alleges that he was not behind in his payments on the mortgage and that he was improperly defaulted and that the note was improperly accelerated.

24.     Campbell alleges that the actions of Defendants by improperly attempting foreclosure on his property is a violation of law, wrongful and tortious and that the Defendants had no authority to foreclose on his home or property, and that their actions constitute negligence, wantonness, abuse of process and slander of title.   As a direct result of the acts complained of the Campbell has suffered great mental anguish, damage to his reputation, economic and emotional damages and claims from Defendants all damages allowable under the law.

### COUNT ONE
### NEGLIGENCE
### (Defendant PNC Bank)

25.     The Plaintiff re-alleges all prior paragraphs as if set out here in full.

26.     The Defendants negligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed by the Plaintiff, negligently

caused his property insurance to be canceled, negligently defaulted the Plaintiff,  negligently attempted a foreclosure sale on Plaintiff's property, were negligent by failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those  bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; negligent by failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiff's loan account and failing to remove the adverse reporting  from Plaintiff's credit once he disputed the same.

27.     As a direct result of the said negligence, the Plaintiff was injured and damaged as alleged above and has suffered mental anguish, economic injury and all other damages allowed by law.

28.     As a result thereof, the Defendants are liable for all natural, proximate and consequential damages due to their negligence.

## COUNT TWO
### WANTONNESS
### (Defendant PNC Bank)

29.     The Plaintiff re-alleges all prior paragraphs as if set out here in full.

30.     The Defendants acted with reckless indifference to the consequences, and consciously and intentionally wrongfully serviced the loan made the basis of this suit, attempted to collect sums not owed by the Plaintiff, caused his property insurance to be canceled, defaulted the Defendants, attempted to conduct a foreclosure sale on Plaintiff's property, failed to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; failed to properly train their employees on the thorough investigation of disputed accounts; failed to properly train, and/or supervise their employees and agents with regard to the handling of Campbell's loan account and failing to remove the adverse reporting from Campbell's credit once she disputed the same.

31.     These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for the Defendants.

32.     The Defendants knew that these actions were likely to result in injury to the Plaintiff including financial and emotional injuries and mental anguish.

33.     As a proximate result of the Defendants' wantonness the Plaintiff was injured and harmed and suffered financial injury and emotional damage.

34.     As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to its wantonness as well as punitive damages upon a proper evidentiary showing.

## COUNT THREE
## UNJUST ENRICHMENT
### (Defendant PNC Bank)

35.     The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

36.     The actions of the Defendants in attempting foreclosure on the home of the Plaintiff in violation of law resulted in Defendants being unjustly enriched by the payment of fees, insurance proceeds and equity in the home.

37.     As a result of the Defendants' unjust enrichment, the Plaintiff has been injured and damaged in that the Plaintiff has been forced to pay charges that were illegal, wrong in character, wrong in amount, unauthorized, or otherwise improper under threat of foreclosure by the Defendants.

38.     The Plaintiff claim all damages allowable under law as a result of the Defendants' wrongful conduct and unjust enrichment.

**COUNT FOUR**
**WRONGFUL FORECLOSURE**
**(Defendant PNC Bank)**

39.     The Plaintiff re-alleges all prior paragraphs as if set out here in full.

40.     Defendants wrongfully initiated and attempted to conduct a foreclosure
        proceeding against the Plaintiff in violation of law.

41.     The attempted foreclosure proceeding by the Defendants was either
        negligent, wanton or intentional, depending on proof adduced at Trial. The
        power of sale was exercised for a purpose other than to secure the debt
        owed by plaintiff, as the plaintiff was current on the debt at the time of the
        default and acceleration.

42.     As a result thereof, the Defendants are liable for all natural, proximate and
        consequential damages due to their actions including an award of punitive
        damages upon a proper evidentiary showing.

**COUNT FIVE**
**SLANDER OF TITLE**
**(Defendant PNC Bank)**

43.     The Plaintiff re-alleges all paragraphs as if set out here in full.

44.     Defendants are attempting foreclosure which has caused a cloud to be
        placed on the title of the property of the Plaintiff.

45.     As the proximate cause of the Defendants' said slandering of the Plaintiff's
        title, he was caused to suffer injuries and damages and claims all damages
        allowable under law.

**COUNT SIX**
**BREACH OF CONTRACT**
**(All Defendants)**

46.     The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in
        full.

47.    The Plaintiff and his Lender entered into the standard Fannie Mae/Freddie Mac Uniform Instrument" mortgage agreement.

48.    The Defendants serviced the loan and breached the agreement by failing to comply with essential terms in paragraph 2 regarding the application of payment and the notice requirements of paragraph 22 of the agreement.

49.    As a result of the Defendants' breach of the mortgage contract, the Plaintiff was caused to suffer injuries and damages and claims all damages allowable under law.

50.    That paragraph 2 of the terms of the agreement entered into between Plaintiff and Lending Tree detail the application of payments.  That, as more fully described above, Defendants failed to apply regular monthly payments, supplemental monthly payments, in the proper manner according to the terms of the note and mortgage.   More specifically, Defendants never applied some payments at all to Campbell's account even though Campbell sent in the payment and it was deposited by Defendants.  Apparently, Defendants have misplaced or are unable to account for the funds from payments made or sent by Campbell.  Moreover, numerous other payments made by Campbell were returned to his by Defendants without reason or without explanation.   In September, October, and November 2013, Campbell sent a monthly payment to Defendants; however, Defendants refused the payment and returned it to Campbell without explanation. After, Campbell called and inquired as to the returned payment, Defendants advised Campbell that he was in default for failure to make payments, but could not explain why he was allegedly in default.  Moreover, Defendants advised Campbell that it would no longer accept payments from him and that Defendants would be turning over his account for foreclosure.  Prior to August 2013, Defendants accepted and cashed Plaintiff's monthly payments, but failed to properly apply them to his account pursuant to paragraph 2 of the mortgage contract.  From August 2013 until January 2014, Defendants returned payments to Campbell again also in violation of the mortgage contract.

51.    Specifically, the May and June 2013, and August 2014 payments, as well as others, were cashed by Defendants but not applied at all to Campbell's account.

52.    That this misapplication of funds constitutes a breach of the mortgage contract and thus entitles Campbell to damages.

53.     In addition, Defendants failed to send proper notices to Campbell as
        required by the mortgage contract. Even if Campbell is in default,
        Defendants failed to send a proper notice of default, a proper notice of
        intent to accelerate, and a proper notice of acceleration.   The contract terms
        related to notice are as follows:

> Lender shall give notice to Borrower **prior to acceleration**
> following Borrower's breach of any covenant or agreement in
> this Security Instrument . . . The notice shall specify (a) the
> default; (b) the action required to cure the default; (c) a date
> not less than 30 days from the date the notice is given to
> Borrower by which the default must be cured; and (d); that
> failure to cure the default on or before the date specified in the
> notice may result in acceleration of the sums secured by this
> Security Instrument and sale of the Property. The notice shall
> further inform the Borrower of the right to reinstate after
> acceleration and the right to bring a court action to assert the
> non-existence of a default or any other defense of Borrower to
> acceleration and sale.  If the default is not cured on or before
> the date specified in the notice, Lender at its option may require
> immediate payment in full of all sums secured by this Security
> Instrument….

Accordingly, Defendants failed to comply with this provision of the mortgage
contract and has therefore breached the contract.

54.     Moreover, Paragraph 22 of the mortgage document gives the Plaintiff the
        right to bring an action to dispute the existence of a default and raise
        defenses thereto.  Accordingly, the Plaintiff exercises his right pursuant to
        paragraph 22 of the mortgage document and hereby challenges the
        existence of a default on his mortgage indebtedness.  As previously,
        discussed, the Plaintiff is not in default, has made payments every month as
        required by the mortgage and note and is not behind on his mortgage
        payments.  Furthermore, the Defendants breached the mortgage contract by
        improperly and illegally force placing insurance on the Plaintiff's mortgage
        account.

## COUNT SEVEN
### FRAUD
### (Defendant PNC Bank)

55.    The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

56.    The Defendants misrepresented that the loan was in default. Further, the Defendants made false and misleading representations, to wit: dissemination of inaccurate information regarding the loan account as being in default and dissemination of inaccurate information regarding the credit history and credit of the Plaintiff that was known to be false. Furthermore, the Plaintiff applied for a loan modification pursuant to the federal HAMP program. The Defendant promised the Plaintiff that he qualified for a loan modification and that he would receive one. In addition, the Defendant promised that until the loan modification was approved that there would be no attempt to foreclose on the property. Defendant failed to keep these promises and the Defendant detrimentally relied on the promises.

57.    Said misrepresentations were made negligently and/or willfully and/or wantonly and/or fraudulently, and/or recklessly with the intent to induce the Plaintiff to act thereon and upon which the Plaintiff did in fact act to his detriment.

58.    Plaintiff justifiably relied upon said representations made by Defendants and as a result of said reliance proceeded with the execution of the loan; at the time said representations were made the same were false and known by the Defendants to be false and/or were false and made by mistake with the intent for Plaintiff to rely thereon.

59.    As a proximate cause of the aforementioned fraudulent misrepresentations made by the Defendants, Plaintiff was proximately caused to suffer injury and damage.

## COUNT EIGHT
### PLACED IN A FALSE LIGHT
### (Defendant PNC Bank)

60.    Plaintiff adopts the above paragraphs as if fully set forth herein.

61.     In association with the servicing of the loan account, Defendants held
        Campbell up in a false light and made undesirable and negative character
        and credit reputation remarks on or about the Plaintiff by either speaking or
        writing undesirable and negative character and reputation remarks about
        Campbell which was offensive, untrue, and inaccurate, and which alleged
        Campbell was behind on his debt serviced by Defendants, or has a bad debt
        with Defendants.

62.     Defendants knew Campbell was not in default on the account, as it was paid
        to date and as such, that there existed no basis in law or fact, for the
        Defendants to make offensive, untrue, and inaccurate reports regarding
        Campbell.  Defendants knew this at the times they were reporting such
        information.

63.     Defendants held Campbell up in a false light and made undesirable and
        negative and credit reputation remarks on or about Campbell in the national
        credit reporting media and to his homeowner insurance carrier. Defendants
        provided this false information to third parties.

64.     The conduct of Defendants was objectionable to Campbell and to any
        reasonable person.  Defendants' action was willful, reckless, wanton and/or
        made with malice and resulted in Campbell being unreasonably placed in a
        false light.

65.     Due to Defendants' conduct, Campbell was caused to have negative credit
        reports, denied homeowners insurance, held up to public ridicule or shame,
        humiliated, made to suffer physically and mentally, and endure anguish.

        WHEREFORE, PREMISES CONSIDERED, Campbell Prays for Judgment
        against Defendants in an amount to be determined by trier of fact.

## COUNT NINE

### DEFAMATION, LIBEL, SLANDER
### (Defendant PNC Bank)

66.     Plaintiff adopts the above paragraphs as if fully set forth herein.

67.     The Defendants willfully, wantonly, recklessly and/or maliciously
        published and communicated false and defamatory statements regarding the

Plaintiff and said statements have subjected the Plaintiff to the denial of credit by third parties, resulted in homeowner's insurance cancellation and harmed the Plaintiff's credit reputation.  As previously stated, the Plaintiff was current on his mortgage account and has made payments each and every month.  Accordingly, he was not in default.  Despite Campbell's account being current, Defendants published in the newspaper false information regarding his account being in default and false information regarding its right to conduct a foreclosure sale on Campbell's property.

68.   Said false and defamatory statements have harmed the reputation of the Plaintiff and/or deterred third persons from associating with Campbell.

69.   The Defendants communicated to credit reporting agencies and/or other third parties, false information that Campbell defaulted on the loan and was in foreclosure, disseminated and imputed false and misleading credit history and worthiness information concerning Campbell.

70.   Defendants published such defamatory and libelous information in the Gadsden Messenger.

71.   Said communications were false in that Plaintiff was not indebted to the Defendants in the amount reported, and Plaintiff was not delinquent as reported by the Defendants, and Plaintiff is the legal and rightful owner of the mortgage note.

72.   At the time said communications were made, Defendants knew, or should have known, of the falsity of the communication or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

73.   As a result of the intentional communication to third parties of false information, Campbell was caused to suffer injury to his reputation in the eyes of the community and the public and was subject to ridicule.

74.   Said communications were oral and/or written.

75.   As a proximate consequence of the Defendants' acts, Campbell was caused to be injured and damaged.

14

76.     Defendants published such defamatory and libelous information. Defendants knew Campbell was not in default on the account, as it was paid to date and as such, that there existed no basis in law or fact, for the Defendants to make offensive, untrue, and inaccurate reports regarding Campbell.  Defendants knew this at the times they were reporting such information.  Furthermore, Defendants published in the local newspaper in Etowah County Alabama the false information of the default on the loan in the foreclosure sale notice.  This foreclosure sale notice states that the Plaintiff's loan is in default and in foreclosure.  Defendants knew this information was inaccurate at the time it published this notice in the local paper, and the published false information harmed Campbell's reputation and character.  As a result, the Plaintiff suffered damages of his reputation which negatively affected their credit and their business causing monetary losses.

77.     Said communications were false in that Plaintiff were not indebted to the Defendants in the amount reported, Plaintiff was not delinquent as reported by the Defendants, and Defendants is not the legal and rightful owner of the mortgage note.

78.     At the time said communications were made, Defendants knew, or should have known, of the falsity of the communication or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

79.     As a result of the intentional communication to third parties of false information, Campbell was caused to suffer injury to their reputation in the eyes of the community.


## COUNT TEN:
## VIOLATIONS OF TRUTH IN LENDING
### (Defendant PNC Bank)


80.     The Plaintiff  re-allege  and  adopt the above paragraphs as if fully set forth herein and also asserts the following:

81.     Defendants violated the Federal Truth in Lending Act.

82.  The Plaintiff institutes this action for actual damages, statutory damages, attorney's fees, and the costs of this action against Defendants for multiple violations of the Truth in Lending Act, 15 U.S.C. §1601et seq. , (hereinafter TILA),and Federal Reserve Board Regulation Z, 12 C.F.R. § 226,promulgated pursuant thereto.

83.  This complaint is solely for monetary damages pursuant to15 U.S.C. § 1640. Under 15 U.S.C. § 1640(a), it is not necessary to allege or to prove actual damages to recover statutory damages.

84.  Defendants, are covered by the Act as it regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making Defendants a creditor within the meaning of TIL, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

85.  Defendants did not provide a proper copy of the notices required by the Act to the Plaintiff.   The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following and other respects:  (a). By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C.§ 1638(b) and Regulation Z § 226.17(b). (b). By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a)and Regulation Z § 226.17(a).  (c). By failing to include in the finance charge certain charges imposed by Defendants payable by plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605and Regulation Z § 226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d). Such amounts include, but are not limited to the attorney fees and late fees, 15 U.S.C. § 1605(a), Regulation Z§ 226.4(a).

86.  The regulations require that the notice shall identify the transaction or occurrence and clearly and conspicuously disclose the following:  The retention or acquisition of a security interest in the consumer's principal dwelling. The consumer's right to rescind, as described in paragraph (a)(1) of this section. How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.  The effects of rescission, as described in paragraph (d) of this section.  The date the rescission period expires. (See Reg. Z §§ 226.15(b)(5) and 226.23(b).

87.  By charging "attorney fees" and other "fees" not authorized by the mortgage contract, Defendants has made unauthorized charges and failed to disclose these charges in violation of the Act.  In this case, Defendants added fees to Campbell' account in September 2013 which are referenced in the notice of default.  Moreover, once the account was turned over to the attorney for foreclosure in December 2014, additional fees were improperly added to the account.  Each time the sale was published in the newspaper up to and including May 2015, Defendants added additional and unauthorized fees to Campbell's account balance.

88.  By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Regulation Z§ 226.22, Defendants understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z § 226.18(c).

89.  That the Defendants have been improperly amortizing the loan, and have failed to provide proper disclosures to the Plaintiff. Defendants failed to send proper monthly statements to Campbell in violation of the Act.

90.  By reason of the aforesaid violations of the Act and Regulation Z, Defendants  are  liable to Campbell in the amount of twice the finance charge, actual damages to be established at trial,  and attorney's fees and costs in accordance with 15U.S.C. § 1640 for violations of Federal Truth in Lending Act.

### COUNT ELEVEN:
### VIOLATIONS OF REAL ESTATE SETTLEMENT
### PROCEDURES ACT (RESPA)
### (Defendant PNC Bank)

91.  The Plaintiff  re-alleges and adopts the above paragraphs as if fully set forth herein and also asserts the following:

92.  Defendants violated the Real Estate Settlement Procedures Act (REPA) by failing to acknowledge or respond to Campbell' Qualified Written Request (QWR).  Defendants violated the Real Estate Settlement Procedures Act (REPA) by failing to acknowledge or respond to Campbell's Qualified Written Request (QWR) within in the time provided by federal law.

93.     Campbell made a Qualified Written Request pursuant to RESPA to
        Defendants on December 2015 and February 2015 which was sent by
        certified mail.  It was signed for by Defendants acknowledging receipt of
        the QWR.  Defendants never acknowledged receipt of the QWR request
        and never responded to it.   Defendants' failure to acknowledge and
        properly respond to the QWR request is a violation of RESPA or the Dodd-
        Frank Act.  Because of said violations of said acts, the Plaintiff was
        damaged because they were not informed of the information regarding their
        loan.  Because the Defendants failed to give this information to Campbell,
        he was not able to cure in alleged default.  Accordingly, Campbell is
        entitled to damages from the Defendants.  Plaintiff suffered damages by
        Defendants' failure to comply with the RESPA law because they were
        unable to get a proper accounting of the fees and charges owed on the
        account to cure any alleged default and as a result a foreclosure sale was
        set.

## COUNT TWELVE

## FAIR CREDIT REPORTING ACT

### (Defendant PNC Bank)

94.     Campbell  re-alleges and adopts the above paragraphs as if fully set forth
        herein and also asserts the following.

95.     The Plaintiff disputed the account and false credit reporting.  Defendants
        were inaccurately reporting that Campbell was delinquent in his mortgage
        loan and in Default.  The Plaintiff repeatedly contacted Defendants from
        September 2014 until April, 28, 2015 and informed Defendants regarding
        ITS INACCURATE REPORTING.  Moreover, the Plaintiff contacted the
        credit national bureaus and informed them of the inaccurate information
        and disputed same.  Nonetheless the credit reports were never changed
        because Defendants kept reporting the account as delinquent and in
        foreclosure.

96.     Despite receipt of the dispute, Defendants failed to properly investigate and
        respond, failed to make any effort to verify the complaints of plaintiff and
        reported the false, derogatory information to the consumer reporting
        agencies in violation of their duties as a furnisher of credit.

97.   According to the national consumer reporting agencies' reports the Defendants falsely reported about plaintiff's disputed debt.

98.   Defendants likewise willfully, or alternatively, negligently, violated the Fair Credit Reporting Act by failing to properly conduct a reasonable investigation and by failing to supply accurate and truthful information.

99.   Rather, Defendants reported false and inaccurate information and failed to retract, delete and suppress false and inaccurate information it reported about the plaintiff.

100.  Defendants failed to conduct a reasonable investigation with respect to consumer credit data it reported about the plaintiff.

101.  Defendants failed to review all relevant and pertinent information provided to it regarding the debt.

102.  As a proximate result of the Defendants' fraudulent conduct the Plaintiff have been injured and damaged.

103.  Defendants' violations and false credit reporting about plaintiff have been a substantial factor in causing credit denials and other damages.

104.  Defendants are liable unto plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

105.  WHEREFORE PLAINTIFF, PRAYS that after all due proceedings be had there be judgment herein in favor of Plaintiff and against Defendants.  1) That there be Judgment in favor of Plaintiff and against Defendants, for all reasonable damages sustained by Plaintiff including but not limited to actual damages, statutory damages, compensatory damages, out-of-pocket

expenses, credit denials, adverse action, lost credit opportunities, costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and for punitive/exemplary damages, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid; and 2) That this Honorable Court order Defendants to reinvestigate and correct the credit report(s), data emanations, and credit histories of and concerning Plaintiff or any of plaintiff's personal identifiers.


## COUNT THIRTEEN

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.
### (Defendant PNC Bank)


106.    The Plaintiff re-incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

107.    The acts and omissions of counter-Defendants as more specifically stated in the facts constitutes numerous and multiple violations of the FDCPA including, but not limited to, §1692e(2), §1692e(8), and §1692f(1), with respect to the Plaintiff. As a result of counter Defendants' violations of the FDCPA, the Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15U.S.C. § 1692k(a)(3) from Defendants.

108.    Within the 12 months preceding the filing of the complaint, Defendants attempted to collect amounts not owed under the mortgage contract. Within the 12 months preceding the filing of the complaint, Defendants sought unjustified amounts, which would include demanding any amounts not permitted under an applicable contract or as provided under applicable law in violation of the Act §1692f(1). Within the 12 months preceding the filing of the complaint, Defendants threatened legal action that was either not permitted or not actually contemplated in violation of the Act §1692 e.

Within the 12 months preceding the filing of the complaint, Defendants communicated with third parties: revealing or discussing the nature of debts with third parties in violation of the Act §1692 c.  Defendants within the 12 months preceding the filing of the complaint last 12 months, failed to identify themselves and notify the Plaintiff in every communication, that the communication was from a debt collector in violation of the Act §1692e(11).   Within the 12 months preceding the filing of the complaint Defendants falsely stated the amount of the debt owed in violation of §1692e2a.

## COUNT FOURTEEN:

### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### (Defendant PNC Bank)

109.   The Plaintiff  re-incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

110.   The acts and omissions of Defendants as more specifically stated in the facts constitutes numerous and multiple violations of the TCPA including, but not limited to 47 USC § 227(b)(1) Restrictions on use of automated telephone equipment.  **It shall be unlawful for any person** within the United States – (A) to make any call **(**other than a call made for emergency purposes or made with the prior express consent of the called party)**using any automatic telephone dialing system** or an artificial or prerecorded voice -(iii) **to any … cellular telephone service…**47 USC § 227(b)(1) *(B) an action to recover for actual monetary loss from such a violation, or to receive**$500 in damages for each such violation**, whichever is greater, If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an **amount equal to** not more than **3 times ($1,500) the amount available under subparagraph (B)** of this paragraph.*

111.   The Defendants used automatic telephone dialing systems to call the Plaintiff's cell phone numerous times from June 2013 until May 2015.  The Plaintiff has never given the Defendants permission to call his cell phone with automated dialing systems.  As a consequence of said acts, the

Defendants have violated the TCPA and are liable for damages pursuant to federal law.

## COUNT FIFTEEN:

## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT
(**Defendant PNC Bank**)

112. The Plaintiff makes a claim under ECOA, which makes it illegal "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). One way that ECOA effectuates this goal is through its notice requirement, which states: "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." Id. § 1691(d)(2). ECOA defines an "adverse action" as a: denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested.

113. When a creditor takes an adverse action against an applicant without giving the required notice, the applicant may sue for a violation of ECOA.  § 1691e ("Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant"); see also Thompson v. Galles Chevrolet Co., 807 F.2d 163, 166 (10th Cir. 1986) (quoting Sayers v. Gen. Motors Acceptance Corp., 522 F. Supp. 835, 840 (W.D. Mo. 1981)).

114. Plaintiff contends that the Defendant's acceleration of his debt constituted a "revocation of credit" for purposes of the definition of "adverse action." ECOA defines "credit" to mean "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

115. On December 20, 2014, Campbell received a notice from Sirote & Permutt informing them that, "due to the default under the terms of the mortgage or deed of trust, the entire balance is due and payable." Campbell made diligent efforts to determine whether PNC's default notices were mere clerical errors or represented PNC's termination of the loan modification agreement. Based on PNC's prolonged non-responsiveness, and its affirmative statements

22

regarding loan acceleration and default, PNC terminated the loan modification agreement and thereby revoked Campbell's credit for purposes of § 1691(d)(6).

116.    When PNC informed Campbell that it had accelerated his loan and was commencing foreclosure proceedings, its statements communicated the bank's refusal to abide by the terms of the loan modification agreement entered into on May 14, 2014, which had given Campbell a longer period to repay the loan. On its face, this communication revoked the prior credit arrangement. Because the Defendants failed to send an adverse action notice, the Defendants took an adverse action without complying with ECOA's notice requirements and have violated the terms of the EOCA and owe damages for said violations to the Plaintiff.

## COUNT SIXTEEN:

## CLAIM FOR DECLARATORY RELIEF
### (ALL DEFENDANTS)

117.    The Plaintiff  re-alleges and adopts the above paragraphs as if fully set forth herein and also asserts the following:

118.    Defendants breached the contract with Campbell by failing to follow the terms for notice requirements agreed to in the mortgage contract as well as payment application.  Defendants never sent the Plaintiff the required notices and failed to properly apply their payments.  As a result Campbell is entitled to the following declaratory relief:  (1) An Order declaring that they are not in default of their mortgage agreement and declaring the notice of default is null and void.  (2) An order declaring that Defendants have no right or authority to foreclose on Campbell's property. (3) An Order prohibiting Defendants from foreclosing on Campbell's property.

**PLAINTIFF (Campbell) DEMANDS A TRIAL BY JURY.**

**WHEREFORE,** the Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

a.      That the Plaintiff have and recover against the Defendants, a sum to be determined by this Court and their peers in the form of actual damages.

b.      That the Plaintiff have and recover against the Defendants a sum to be determined by this Court in the form of compensatory and punitive damages.

c.      That Plaintiff, Campbell, be awarded attorney fees and court cost.

d.      That the Plaintiff have such other and further and proper relief as the Court may deem just and proper:


RESPECTFULLY SUBMITTED:


/s/ Kenneth James Lay
HOOD & LAY, LLC
1117 22nd Street South
Birmingham, Alabama 35205
Tel: (205) 323-4123
Fax:(205) 776-2040
Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this the 24th day of August 2015, a copy of the forgoing amended complaint has been served upon counsel for all parties to this proceeding by U.S. Mail, postage prepaid.

<u>/s/ Kenneth J Lay</u>
Kenneth Lay